CULLINAN, State Com'r of Excise, v. FIDELITY & CASUALTY CO. OF NEW YORK et al.

(Supreme Court, Appellate Division, First Department. June 5, 1903.)

1. INTOXICATING LIQUORS—CERTIFICATE—BOND—DISORDERLY PLACE—EVIDENCE —SUFFICIENCY.

In an action on a bond given to obtain a liquor tax certificate, evidence examined, and *held* sufficient to sustain a finding that a disorderly place was being conducted on the premises.

2. SAME—TRANSFER OF BUSINESS—LIABILITY.

The fact that the principal in a liquor bond given to secure a liquor tax certificate, and which was conditioned in conformity with Liquor Tax Law, Laws 1897, p. 210, c. 312, § 11, subd. 1, that the principal would not "suffer or permit" the premises to become disorderly, has transferred the business without surrendering the certificate or transferring it, as permitted by the statute, does not relieve the bond from

liability owing to a subsequent maintenance of a disorderly place on the premises.

Appeal from Trial Term, New York County.

Action by Patrick W. Cullinan, as state commissioner of excise, against the Fidelity & Casualty Company of New York and Frank L. Parker, and action by the same plaintiff against the Fidelity & Casualty Company and Julius Stein. From judgments (80 N. Y. Supp. 187) in favor of plaintiff in each action, defendant corporation appeals. Affirmed.

Argued before HATCH, PATTERSON, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

Charles C. Nadal, for appellant.
Herbert H. Kellogg, for respondent.

INGRAHAM, J. The action is brought on a bond given by the defendant Parker, as principal, and the appellant, as surety, to obtain a liquor tax certificate authorizing the principal to traffic in liquors in the city of New York. By the bond, Frank L. Parker, as principal, and the Fidelity & Casualty Company of New York, as surety, "are held and firmly bound unto the people of the state of New York in the penal sum of sixteen hundred dollars." The bond then recites that the principal was about to apply for a liquor tax certificate authorizing said principal to traffic in liquors at 121–123–125 West Thirty-Ninth street and 1418 Broadway, in the city of New York, under subdivision 1 of section 11 of the liquor tax law (Laws 1897; p. 210, c. 312); and the condition of the obligation was such that, if the said liquor tax certificate "applied for is given unto the said principal, and the said principal will not, while the business for which such liquor tax certificate is given shall be carried on, suffer or permit any gambling to be done in the place designated by the liquor tax certificate in which the traffic in liquors is to be carried on, or in any yard, booth, garden, or any other place appertaining thereto or connected therewith, or suffer or permit such premises to become disorderly, and will not violate any of the provisions of the liquor tax law, or any act amendatory thereof or supplementary thereto, and the said principal will pay all fines and penalties incurred or imposed for violation of the liquor tax law, and any judgment or judgments recovered or entered against the said principal for or on account of any such violation of said law, together with all costs taxed or allowed in any action or proceeding brought or instituted under the provisions of said liquor tax law, then the above obligation to be void." The complaint alleges that the defendant Parker applied for a liquor tax certificate for the traffic in liquor by him under the provisions of subdivision 1 of section 11 of the liquor tax law for and during the excise year beginning May 1, 1901; that simultaneously with the filing of said application statement, for the purpose of securing the issuance to him of the liquor tax certificate applied for, the defendant Parker presented to and filed with the special deputy commissioner of excise this bond, as required by the provisions of the liquor tax law, duly executed by the defendant; that upon the receipt of this application and bond a certificate for the

traffic in liquors was issued to the said Parker, and the said Parker was the owner and holder of the said liquor tax certificate, and was carryii..g on the business for which such certificate was given at said premises.    It further alleges that the defendant Parker, on the 20th, 21st, 25th, and 27th days of March, 1902, and on the 2d day of April, 1902, did suffer and permit the said premises designated in said liquor tax certificate as those in which the traffic in liquors was to be carried on to become, be, and remain disorderly, and during all of said period did carry on, and permit to be carried on, and was .interested in a traffic and business the carrying on of which was and is in violation of law; that on Sunday, January 12, 1902, the 27th day of March, 1902, and on the 2d of April, 1902, the defendant Parker, by himself, his agents, servants, and bartenders, trafficked in liquors by selling liquor in quantity of less than five wine gallons, which was then and there drunk on the said premises; and alleges other violations of the liquor tax law.    The defendant admits the execution and delivery of the bond, and denies the other allegations of the complaint.    Upon the trial the issuance of the certificate was conceded. The bond and the application for the liquor tax certificate were produced, and introduced in evidence.    It was also proved that there was no transfer of that certificate during the time it was in force up to April 30, 1902; that there was no surrender of such certificate under section 25 of the liquor tax law (Laws 1897, p. 225, c. 312), and that this liquor tax certificate stood in the name of the defendant Parker during the entire excise year.    A police officer testified that he went to Parker's place of business with another officer on the 20th of March, 1902; that he also visited the premises on the 21st, 25th, and 27th of March and the 2d of April, 1902; that on the 20th of March he walked into the dining room, sat down at the table, and ordered refreshments; that he saw a number of women sitting there, several of whom the witness knew to be street walkers; that while sitting there one of the women came over and spoke to the witness, sat down at the table, and agreed to meet the two officers after they were through eating; that on the 21st day of March, around 11:30 p. m., he again visited the restaurant, ordered something to eat, and after a few moments was solicited by a woman; that the woman said she had the proprietor's permission to take men to her room; that she then passed out of the dining room to the elevator, with the witness, and up to room 109, and was let in by a colored woman, who was apparently an employé of the hotel; that on the 25th he returned to the hotel with another officer, when this woman to whose room he went on the previous visit came over, and brought with her a companion, when the witness and his associate went upstairs with the two women to their rooms; that on the 2d of April, at about 1:30 or 1:35 a. m., in the morning, the witness, with another officer, went to this hotel, sat down at the table, and ordered two glasses of whisky, which were received and paid for, and the officer then placed the proprietor under arrest for a violation of the excise law; that at the times the witness went to the restaurant he saw women in the place, apparently living there; that when a man would come in and sit down at a table the women would go to the table and get into conversation with him;

that on the morning of March 27th there were from 20 to 35 men and
women present, and on April 2d between 30 and 40; that during this
time the door leading into the restaurant or dining room was open.
The testimony of this witness was corroborated by other officers.
During this time the liquor tax certificate issued in the name of the de-
fendant Parker was exposed in the barroom.

On behalf of the defendant, Parker testified that in April, 1901, he
took out this liquor tax certificate; that he continued to conduct the
place until about the 1st of September, 1901; that about September 1,
1901, he made a verbal transfer of that business to a man named
Colonel Fortune; that the witness was in ill health, and turned the
business over to Fortune; that after that the defendant left, and had
nothing more to do with the business; that when he left he did
nothing with reference to the liquor tax certificate; and that he
never authorized Colonel Fortune to use that certificate, or to sell
liquor under it, never authorized any one to sell liquor at the place
in question after September 1, 1901. The cashier and bookkeeper of
this hotel testified that Parker was proprietor of the place until about
the 1st of September, 1901, when Colonel Fortune took possession of
the place; that Fortune remained in possession until the 10th of
October, 1901, and on the 10th of October one A. E. Ruehl came in;
that shortly after, Fortune left the hotel entirely, turning over the
possession of the place to Ruehl on October 10th; that after that
Ruehl paid the bills and hired the help; and this condition existed un-
til May, 1902. Ruehl testified that he took possession of these prem-
ises on October 10th in the interest of the Ruehl Hotel Company, a
corporation, under a verbal agreement with Colonel Fortune, by
which Ruehl was to pay his liabilities, and give him for three months
a room and board in the house, and Ruehl was to take charge of the
place, take in the receipts, and pay the expenses; that on and after
the 12th of January, 1902, the Ruehl Hotel Company was managing
the premises, and the defendant Parker had nothing whatever to do
with the place, and had no contract or arrangement of any kind with
Parker by which he was interested in it. Upon this evidence the
plaintiff moved for the direction of a verdict, and the defendant moved
for a dismissal of the complaint. The court denied the defendant's
motion and granted the plaintiff's motion, and directed a verdict for
the plaintiff for the amount of the bond.

There was no request to submit any question to the jury. It was
not disputed but that this evidence was sufficient to sustain a verdict
that the place was a disorderly place within the provisions of the
bond; and the only question presented is whether the fact that the
defendant Parker had surrendered the premises prior to the time at
which the offense was committed relieved the surety on the bond.
The bond recites the application for a liquor tax certificate under sub-
division 1 of section 11 of the liquor tax law (chapter 312, p. 210, of
the Laws of 1897). The condition of the obligation is not that the
principal would not maintain a disorderly house upon the premises,
but that the principal would not "suffer or permit such premises to
become disorderly." If he did suffer or permit the premises to be-
come disorderly, then the obligation was to be in full force and effect.

The fact that the principal withdrew from the actual management of the business without surrendering the certificate, or transferring it to his successor, would not relieve either of the obligors from liability to the state. The intention of providing a bond is clearly to prevent the premises, during the period that the certificate is in force, from being used for an illegal purpose; and that object would be rendered nugatory if the parties to it could escape liability upon proof that the principal on the bond, who had assumed the responsibility of preventing the place from being used for illegal purposes, could withdraw from active participation in the business, leaving his transferees or subordinates to maintain the place in violation of the law, under the certificate obtained by the execution of the bond. I think that the obligation assumed by the principal and surety is that, as long as liquors are sold under the authority of the certificate, the principal shall see to it that the premises upon which the liquors are sold are not used for illegal purposes. The defendants were, therefore, clearly liable, and the court correctly directed a verdict for the plaintiff.

It follows that the judgment and order appealed from should be affirmed, with costs. All concur.